IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATIONAL LABOR RELATIONS BOARD,

    Plaintiff,

        and

LOCAL UNION NO. 1385, WESTERN
COUNCIL OF INDUSTRIAL WORKERS,

    Plaintiff in Intervention,                  No. CIV 98-35 MV/RLP

        v.

PUEBLO OF SAN JUAN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Application for Attorney Fees under the Equal Access to Justice Act, filed June 12, 2002 **[Doc. No. 72]**. The Court, having considered the petition, briefs, relevant law and being otherwise fully informed, finds that Defendant's application is well-taken and will be **GRANTED** in part.

## BACKGROUND

In this action, Plaintiff National Labor Relations Board ("NLRB") and Intervenor Local Union No. 1385, Western Council of Industrial Workers ("Union") challenged the validity of a labor ordinance ("Ordinance") adopted by Defendant Pueblo of San Juan ("Pueblo"). The Ordinance stated that union membership could not be required of anyone employed on Pueblo lands.

On January 12, 1998, the NLRB filed the instant action seeking declaratory and injunctive relief and the Union intervened. Each party filed a motion for summary judgment, agreeing that there

were no genuine issues of material fact. The Pueblo asserted that the Ordinance was a valid exercise of its inherent sovereign authority. The NLRB and the Union argued that federal labor law preempted any legislation on the part of the Pueblo in this area. In a Memorandum Opinion and Order dated November 30, 1998 ("Court's Order"), this Court rejected the position set forth by the NLRB and the Union and granted summary judgment to the Pueblo, holding that the Pueblo retains the authority to enact laws which prohibit requiring union membership as a condition of employment. *See National Labor Relations Bard v. Pueblo of San Juan*, 30 F. Supp.2d 1348 (D.N.M. 1998), *aff'd*, 280 F.3d 1278 (10th Cir. 2000), *aff'd on rehearing en banc*, 276 F.3d 1186 (10th Cir. 2002).

The NLRB and the Union appealed the Court's Order, claiming that the Pueblo's enactment of the Ordinance violated the National Labor Relations Act ("NLRA"). In an opinion dated September 26, 2000 ("Tenth Circuit Opinion"), the Tenth Circuit affirmed this Court's Order, holding that "the NLRA does not preempt a tribal government from the enactment and enforcement of a right-to-work tribal ordinance applicable to employees of a non-Indian company who enters into a consensual agreement with the tribe to engage in commercial activities on a reservation." *National Labor Relations Board v. Pueblo of San Juan*, 280 F.3d 1278, 1286 (10th Cir. 2000). Judge Murphy filed a dissenting opinion.

Upon the petitions of the NLRA and the Union, in an Order dated December 19, 2000, the Tenth Circuit ordered that the appeals be reheard en banc. In their challenge to this Court's decision and the Tenth Circuit panel's ruling, the NLRB and the Union argued that §8(a)(3) of the NLRA clearly protects the rights of a union and an employer to enter into union security agreements meeting the requirements of §8(a)(3). Moreover, the NLRB and the Union maintained that Congress intended to preempt state and local regulation of union security clauses with the narrow exception of §14(b)

of the NLRA, allowing only states or territories to prohibit otherwise permitted union shop provisions. The Tenth Circuit disagreed and, in an opinion dated January 11, 2002 ("En Banc Opinion"), again affirmed this Court's Order, holding that the Pueblo, as an Indian tribe, "retains the sovereign power to enact its right-to-work ordinance, and to enter into the lease agreement with right-to-work provisions, because Congress has not made a clear retrenchment of such tribal power as is required to do so validly." *National Labor Relations Board v. Pueblo of San Juan*, 276 F.3d 1186, 1191 (10th Cir. 2002). Judge Briscoe concurred, and Judge Lucero joined in Judge Briscoe's concurrence. Judge Murphy filed a dissenting opinion.

Thereafter, on June 12, 2002, the Pueblo filed the instant Application for Attorney Fees under the Equal Access to Justice Act ("EAJA"), requesting $376,746.49[1] in attorneys fees, $15,260.02 in other expenses and $17,923.75 in New Mexico Gross Receipts Tax. The NLRB filed a response in opposition on August 30, 2002. The Pueblo's reply papers followed on November 1, 2002.

## **STANDARD**

The EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). For purposes of a fee award, "party" is defined as:

> any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed

---

[1] Originally, the Pueblo requested a total of $415,815.25 in fees, but amended this request to adjust for fees paid by a third party, clerical errors, post-en banc time and estimated time. *See* Exhibit A to the Pueblo's Reply.

>$7,000,000 at the time the civil action was filed, and which had not more than 500
>employees at the time the civil action was filed.

28 U.S.C. § 2412(d)(2)(B)(ii). For purposes of determining what expenses are allowed and the reasonable rate at which fees can be awarded, the EAJA provides:

>"fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . (ii) attorneys fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. §2414(d)(2)(A). Thus, pursuant to the EAJA, a non-governmental party in an action brought by or against the United States is entitled to an award of fees and reasonable expenses so long as that party qualifies as a party and prevails in the litigation, the government's position is not substantially justified, no special circumstances make the award unjust and the fee application is timely filed.

## **DISCUSSION**

Under the EAJA, the Pueblo seeks an award of attorneys fees, related expenses and state gross receipts tax payments. Citing the limited availability of qualified attorneys specializing in Indian law, the Pueblo seeks an award of fees at rates higher than the $125 statutory hourly rate. Specifically, the Pueblo requests that fees be awarded at the rate of $225 per hour for partners, $150 per hour for associates and $75 per hour for law clerks and paralegals.

The NLRB does not dispute that the Pueblo qualifies as a party and is the prevailing party for purposes of the EAJA. Similarly, the NLRB does not claim that there are special circumstances

which would render an award unjust or that the Pueblo's fee application was untimely. The NLRB, however, contests the Pueblo's fee application on the ground that the position of the NLRB throughout this litigation was substantially justified. Further, the NLRB contends that, even if the Court grants the Pueblo's application, the fees awarded should not exceed the statutory rate. Moreover, the NLRB argues that any award granted should exclude expenses for long distance telephone calls, faxes, and state gross receipts taxes.

      A.      <u>Substantial Justification</u>

The government bears the burden of proving that its litigation position was substantially justified. *See Hadden v. Bowen,* 851 F.2d 1266, 1267 (10th Cir. 1988). In order to meet this burden, the government must prove that its position "had a reasonable basis in law and in fact." *Id.* The Supreme Court has defined the term "substantially justified" as "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted). Moreover, the Supreme Court has explained that substantially justified means "more than merely undeserving of sanctions for frivolousness." *Id.* "The government's success or failure on the merits at each level may be evidence of whether its position was substantially justified, but that success or failure alone is not determinative of the issue." *Hadden*, 851 F.2d at 1267.

According to the NLRB, its position that the NLRA prohibited the Pueblo from enacting the Ordinance was reasonable and well-grounded in the law. The NLRB explains that its position relied upon settled principles of labor law and Indian law. Specifically, the NLRB contends that there is statutory, Supreme Court, circuit court and district court precedent to support its arguments that: (1) the NLRA is a comprehensive regulatory scheme which regulates union security subject only to the

exception enumerated in §14(b); and (2) Congressional intent to apply a federal statute of general application to Indian tribes and thereby to override Indian sovereignty may be inferred from the presence of a comprehensive regulatory scheme, even in the absence of an explicit directive as to Indians. The NLRB contends that the fact that Judge Murphy adopted the position of the NLRB in his dissenting opinions, in addition to the fact that Judges Briscoe and Lucero wrote separately to concur in the En Banc Opinion, demonstrate that the position of the NLRB was substantially justified.

This Court and the Tenth Circuit considered and rejected the NLRB's arguments that Supreme Court and other authority support its position, finding that the NLRB's position in fact runs counter to such authority. In the Court's Order, this Court noted that while §8(a) of the NLRA specifically permits requiring union membership as a condition of employment, §14(b) of the NLRA "specifically carved out an exception to its general preemption of labor law, allowing continued state regulation of contracts which required union membership as a condition of employment." *National Labor Relations Board*, 30 F. Supp.2d at 1353. Next, the Court noted that in two cases, *Algoma Plywood & Veneer Co.*, 336 U.S. 301 (1959) and *Retail Clerks Intern. Ass'n v. Schermerhorn*, 375 U.S. 96 (1963), the Supreme Court established that "federal law does not preempt regulation of contracts which require union membership as a condition of employment." *National Labor Relations Board*, 30 F. Supp.2d at 1353. The Court wrote that it was despite the language of the statute and the Supreme Court's "explicit holdings" that the NLRB advanced its argument that the the Pueblo was preempted by the NLRA from enacting the Ordinance. *Id.* This Court further explained that "the NLRB's and the Union's assertion that federal law preempts all regulation of this area not specifically allowed in §14(b) is equivalent to arguing that Congress abrogated Indian sovereign authority to regulate contracts requiring union membership by failing to specifically state that Tribes

-6-

retain such authority." *Id.* at 1354-55. This position, the Court noted, "'turns the historic tribal sovereignty analysis on its head.'" *Id.* at 1355 (citation omitted). Moreover, the Court noted that in support of their position, the NLRA and the Union "'cite[d] no specific federal statute'" and failed to "'explain why state [regulation] of the same type of activity escapes the asserted conflict with federal policy.'" *Id.* (citation omitted). Similarly, the Court found that the assertion of the NLRB and the Union that the deference accorded to states would not be accorded to Indian Tribes was "simply speculation," "[g]iven that Congress has specifically chosen to allow a diversity of approaches on this issue among the states." *Id.* Rather, the Court found that Supreme Court precedent required it to "err on the side of preserving rather than infringing the Tribe's right to self-governance." *Id.* This Court thus found that "the explicit Congressional statement in §14(b) that federal policy shall not be exclusive in this area, Supreme Court holdings that federal law does not preempt state regulation of contracts requiring union membership, and Congressional silence as to the status of Indian Tribes under the NLRA" required the Court to reject the position set forth by the NLRB and the Union. *Id.* The Tenth Circuit upheld this finding. Accordingly, rather than being supported by Congressional and Supreme Court authority, the NLRB's position is in direct contravention to such authority. A position which runs counter to such authority cannot be advanced with substantial justification. *See Federal Election Commission v. Christian Action Network, Inc.*, 110 F.3d 1049, 1063 (4th Cir. 1997).

  The NLRB also contends that it was substantially justified in relying on the *Tuscarora/Coeur d'Alene* line of cases to argue federal preemption of this area. The NLRB bases this contention on the fact that, in their dissenting and concurring opinions, the circuit judges found this line of cases applicable. In the En Banc Opinion, the Tenth Circuit considered and rejected the applicability of

*Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960), in which a Tribe owned property that the Supreme Court held was subject to condemnation under the Federal Power Act in order to create a reservoir. In reaching this holding, the Supreme Court had stated that "a general statute in terms applying to all persons includes Indians and their property interests." *Id.* at 116. The Tenth Circuit found that *Tuscarora* was not persuasive in this case, and explained:

> *Tuscarora* dealt solely with issues of ownership, not with questions pertaining to the tribe's sovereign authority to govern the land. . . . It was the tribe's possessory interest in the land, rather than its sovereign authority to govern activity on the land, that was at stake in *Tuscarora*. The *Tuscarora* Court's remarks concerning statutes of general applicability were made in the context of property rights, and do not constitute a holding as to tribal sovereign authority to govern.

*National Labor Relations Board*, 276 F.3d at 1198-99. The Tenth Circuit concluded that *Tuscarora* does not apply where, as here, an Indian tribe has exercised its right as a sovereign rather than in a proprietary capacity. *See Id.* at 1199. In reaching its conclusion, the Tenth Circuit noted, "[i]n spite of the [NLRB]'s attempts to bring to our attention multiple cases where the rule was applied to a tribe *qua* sovereign, no citations were found to be apposite." *Id.*

In her concurrence with the majority opinion, Judge Briscoe expressed her belief that the *Tuscarora/Coeur d'Alene* analytical framework was in fact controlling in this case. *See Id.* at 1200-01. Contrary to the NLRB's position, however, Judge Briscoe concluded that, under this analytical framework, §8(a)(3) does not preempt tribes from enacting right-to-work laws.

Judge Lucero joined in Judge Briscoe's concurrence, but wrote separately to state that under either the approach set forth in the majority opinion or the approach set forth in Judge Briscoe's concurrence, "the result reached today [was] mandated by two United States Supreme Court cases," *Schermerhorn and Algoma Plywood*. *Id.* at 1201. Moreover, Judge Lucero specifically stated,

-8-

"[t]hese cases do not permit us to entertain the interpretation or result advocated by appellants in this case." *Id.*

As the NLRB argues, in his dissenting opinion, Judge Murphy adopted the NLRB's position that *Tuscarora* was applicable to the instant case and that, under *Tuscarora*, Congress implicitly divested the Pueblo of the power to enact the Ordinance. *See Id.* at 1210. It is clear, however, that the fact that one court agrees with the government, standing alone, does not establish that the government's position is substantially justified. *See Chester v. Apfel*, 1 Fed. Appx. 792 (10th Cir. 2001) (unpublished decision); *Estate of Smith v. O'Halloran*, 930 F.2d 1496, 1502 (10th Cir. 1991). The same certainly must be true when one dissenting judge agrees with the government. Moreover, it is not the fact of a decision which determines the substantial justification of an issue, but rather the rationale of such a decision: whether the rationale of an ultimately rejected decision is entitled to any weight depends upon the cogency of the rationale for that decision. *See United States v. Paisley*, 957 F.2d 1161,1167 n.4 (4th Cir.), *cert. denied sub nom.*, *Crandon v. United States*, 506 U.S. 822 (1992). The rationale for Judge Murphy's dissenting opinion must be viewed in the context of the Tenth Circuit's majority and concurring opinions. The majority held that the NLRB failed to cite to any cases which supported the applicability of *Tuscarora* to the instant case. Judge Briscoe believed that applying *Tuscarora* to the instant case would result in an outcome opposite to the one advanced by the NLRB. Judge Lucero wrote that, whether *Tuscarora* was applied or not, a judgment against the NLRB was mandated by Supreme Court authority. In the face of these analyses, this Court cannot conclude that the cogency of Judge Murphy's rationale is strong enough to provide substantial justification for the NLRB's position. Accordingly, the NLRB has not met its burden to establish that

its litigation position was substantially justified. As the NLRB's position was not substantially justified, the Pueblo's application for fees must be granted.

        B.      <u>Reasonableness of Hours</u>

The NLRB claims that the time spent on this matter by the Pueblo's attorneys was excessive. Specifically, the NLRB argues that this case involved only legal issues and that the very same legal issues were briefed and re-briefed at every stage of this case. Accordingly, the NLRB concludes, the Pueblo's attorneys should not have needed to spend as much time as they did at the initial appellate level and at the en banc level.

The Court is not persuaded that the Pueblo's attorneys' hours were excessive. As the Pueblo explains, the workload of its attorneys was dictated in large part by the volume of briefs filed by the plaintiffs herein. The NLRB refused to consolidate briefing with the Union, thus requiring the Pueblo's attorneys, at each stage of the litigation, to expend significant time reviewing two sets of opposing briefs and consolidating its response to those briefs into one response. The Court notes that the parties and *amicus curiae* submitted thirteen briefs to this Court and six briefs to the Tenth Circuit panel. The Board and the Union submitted an additional seventy-three pages of briefing at the en banc level. In addition, at the en banc level, the Pueblo was required to respond to the new arguments raised in Judge Murphy's dissent. Based on the circumstances, the Court finds that the hours expended by the Pueblo's attorneys were reasonable and necessary to successfully defend the Pueblo in this five-year litigation.

C.    Rate of Fees Awarded

The Pueblo asks the Court to award fees at a rate higher than the statutory cap of $125. In support of this request, the Pueblo argues that, because this case involved several complex federal Indian law issues, it presented "the 'unusual situation' where the legal services rendered require specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." *Chynoweth v. Sullivan*, 920 F.2d 648, 649 (10th Cir. 1990). The NLRB opposes the Pueblo's request, arguing that the Pueblo has failed to establish that Indian law expertise is attainable only through specialized training or that such expertise is not attainable by a competent attorney through a diligent study of the governing legal principles.

In its research, this Court has found only one decision which addressed the issue of whether, under the EAJA, Indian law is a specialized field which justifies a fee award at a rate above the statutory cap. In *Hoopa Valley Tribe v. Watt*, 569 F. Supp. 943 (N.D. Cal. 1983), the district court found "that the limited availability of qualified attorneys with the requisite special expertise in Indian law justifies the hourly rates requested by plaintiff in excess of [the statutory rate]." *Id.* at 947. Moreover, the court explained that "[a]ttorneys without this expertise would undoubtedly have expended a far greater number of hours to achieve the same result, albeit at a lower rate. Consequently the expense to the government would have been substantially greater." *Id.* In a different context, this Court considered the significance of two attorneys with "more than 45 years of Indian law experience between them," and found that "[a] limited number of attorneys in the United States share their level of expertise and accomplishment in this area." *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp.2d 1091, 1105 (D.N.M. 1999).

The Court finds persuasive the reasoning of *Hoopa Valley Tribe*. Taking together the holding of that case with this Court's finding in *Ramah Navajo Chapter*, the Court finds that Indian law "falls sufficiently outside the mainstream of general legal practice" to entitle the Pueblo to a fee award at a rate exceeding the statutory cap. *Chynoweth*, 920 F.2d at 650. As set forth in the affidavits submitted in support of the Pueblo's application, the Pueblo's lead and other attorneys are specialists in Indian law, Indian law specialization was necessary to successfully resolve this case for the Pueblo and, given the complexity of the issues raised by the NLRB, other Indian law specialists likely would not have agreed to work on this case at rates of less than $225 to $275 per hour. Accordingly, this Court finds that the Pueblo is entitled an award of fees at the rates requested in the fee application.

D.  Allowable Expenses

The NLRB opposes the Pueblo's inclusion in its request for other expenses payment of state taxes, long distance telephone charges and telecopier charges. According to the NLRB, the EAJA does not specifically provide for the recovery of such expenses and, because the EAJA is to be strictly construed, such expenses should be disallowed.

Under the EAJA, the Pueblo is entitled to "other expenses." 28 U.S.C. §2412(d)(2)(A). The Tenth Circuit has not addressed the issue of whether state taxes, telephone or telecopier charges are reimbursable under the EAJA as other expenses. Relying on a D.C. Circuit case, the Tenth Circuit held that costs for travel expenses and postage fees are not authorized. *See Weakley v. Bowen,* 803 F.2d 575, 580 (10th Cir. 1986) (citing *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066 (D.C. Cir. 1985)). In *Massachusetts Fair Share*, the D.C. Circuit disallowed not only travel expenses and postage fees but also taxi fares, messenger services and telephone bills, finding that only duplication expenses were eligible for reimbursement under the

-12-

EAJA. 776 F.2d at 1069. Other circuits, however, have held that "[t]he examples of allowable expenses set out in section 2412(d)(2)(A) are not exclusive." *Aston v. Secretary of Health and Human Services*, 808 F.2d 9, 12 (2nd Cir. 1986) (upholding district court's allowance of $555.55 in telephone, postage, travel and photocopying costs); *see also International Woodworkers of America, AFL-CIO, Local 3-98 v. Donovan*, 769 F.2d 1388, 1392 (9th Cir. 1985) (holding that award of costs for telephone calls, postage, air courier and attorney travel expenses was proper as these are costs that are ordinarily billed to a client and are routine under all other fee statutes).

This Court agrees that the expenses enumerated in the statute are set forth as examples rather than as an exclusive list. The telephone and telecopier costs at issue here are costs which are routine, are billed to the client in the normal course of business and are allowed under other fee statutes. To find such costs to be disallowed under the EAJA effectively would "read 'other expenses' out of the statutory definition." *Robinson v. Sullivan,* 719 F. Supp. 1012, 1014 (D. Kan. 1989) (unpublished decision). Such a narrow reading of the statute also would contravene the purpose of the EAJA to make competent legal representation available to parties in litigation against the government. As the Pueblo's long distance telephone expenses and telecopier expenses were reasonable and necessary in defending this case, reimbursement of these expenses is warranted.

To the contrary, the Court does not find that the Pueblo's payment of state taxes fits within the spirit of the statute. Moreover, this Court has found no decisions in which such expenses were found to be reimbursable under the EAJA. Accordingly, the Court will exclude the amount of the state taxes from the Pueblo's award.

**CONCLUSION**

The NLRB has failed to establish that its position during this litigation was substantially justified. Accordingly, as the prevailing party, the Pueblo is entitled to an award of fees and other expenses. As set forth herein, the Pueblo has requested fees at a reasonable rate and for hours reasonably expended. Moreover, the Pueblo has properly requested reimbursement for its related expenses. The Pueblo, however, is not entitled to reimbursement for its payment of New Mexico Gross Receipts Tax. Accordingly, the Pueblo is entitled to an award of fees in the amount of $376,746.49 and other expenses in the amount of $15,260.02.

**IT IS THEREFORE ORDERED** that Defendant's Application for Attorney Fees under the Equal Access to Justice Act is **GRANTED** in part.

**DATED** this 4th day of December, 2003.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
Margery E. Lieber
Eric G. Moskowitz
Nancy E. Kessler Platt

Attorneys for Defendants:
Lee Bergen
Daniel I.S.J. Rey-Bear
Thomas J. Peckham
Heather Whiteman Runs Him